IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CORLETTA ROSIE WATKINS, individually
and on behalf of all others similarly situated,

                        Plaintiffs,

v.                                     CIVIL  ACTION  NO.  3:08-0132

WELLS FARGO HOME MORTGAGE,
a Division of Wells Fargo Bank, N.A.,

                        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court is Defendant's Motion to Dismiss Amended Complaint (Doc. 6).

Based on the briefs and oral arguments, and for the reasons below, the Court **GRANTS in part** and

**DENIES in part** the motion.  The Court also **GRANTS** Plaintiff's Motion for Leave to File Surreply

(Doc. 15) and so considered the brief in making its determination.

**Facts**

In September 2003, Plaintiff Corletta Rosie Watkins obtained a loan from Defendant Wells

Fargo in the amount of $43,350.  The loan documents included an adjustable rate provision that

permitted the interest rate to vary over the course of the loan, up to 12.625%.  When the rate

increased, thereby increasing her monthly payments, Plaintiff could not meet her payments.

In January 2008, Plaintiff filed an Amended Complaint bringing suit against Defendant for

causes of action related to what Plaintiff describes as "predatory lending."  Defendant removed to this

Court on February 26, 2008.

The Amended Complaint brings several causes of action: 1) Class Claim (on behalf of similarly situated individuals) for Unconscionable Contract; 2) Individual Class Claim for Unconscionable Contract; and 3) Individual Claim for Fraudulent Origination.

On March 28, 2008, Defendant Wells Fargo brought the Motion to Dismiss at issue, arguing that Counts I and II are preempted by federal law and fail to state a claim under the West Virginia Consumer Credit Protection Act and that Count III is not pled with adequate specificity.

**Discussion**

**Counts I and II: Preemption by National Bank Act**

Defendant first argues that Counts I and II for unconscionability are preempted by the National Bank Act ("NBA") and under the NBA, Plaintiff fails to state a claim based on which relief can be granted.  Defendant argues that its actions were within the constraints of the federal law in that the NBA specifically allows for adjustable rate loans and prepayment charges, governs the underwriting requirements of loans by a national bank, and regulates the manner, substantive terms, and remedies related to loans.  In oral arguments, Defendant clarified that their argument rests upon field preemption, rather than express preemption or conflict preemption.

Plaintiff agrees that Defendant is a national bank, but responds that a national bank is still subject to the "long-standing contract principle of unconscionability."  Plaintiff contends that the NBA has not explicitly preempted state contract law defenses, that the regulations promulgated by the Office of the Comptroller of the Currency ("OCC") state that contract law is not preempted, and that the OCC interpretive rulings have acknowledged that the Uniform Commercial Code, which includes the unconscionability doctrine, and the deceptive trade practice acts are not preempted.

-2-

Finally, Plaintiff argues that preemption is inappropriate because there is no federal remedy for Plaintiff's claims.

"The Supremacy Clause of the Constitution renders federal law 'the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Anderson v. Sara Lee Corp.,* 508 F.3d 181, 191 (4th Cir. 2007) *quoting* U.S. Const. art. VI, cl. 2. "As a result, federal statutes and regulations properly enacted and promulgated can nullify conflicting state or local actions." *Id. quoting College Loan Corp. v. SLM Corp.,* 396 F.3d 588, 595 (4th Cir. 2005). "Federal law may preempt state law under the Supremacy Clause in three ways – by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" *Id. citing Pinney v. Nokia, Inc.,* 402 F.3d 430, 453 (4th Cir. 2005).[1]  "[E]xpress preemption takes place when 'Congress expressly declares its intent to preempt state law.'" *Id.* at 191, n.10 *quoting Pinney,* 402 F.3d at 453.  "[F]ield preemption occurs when Congress 'occupies the field' by regulating so pervasively that there is no room left for the states to supplement federal law." *Anderson*, 508 F.3d at 191, n.10 *quoting Cox v.*

---

[1]Although Defendant discussed complete preemption as an alternative to field preemption or conflict preemption, complete preemption is utilized by the courts to determine jurisdiction. "Under complete preemption a state claim arises under federal law when Congress 'so completely preempts a particular area that any civil complaint raising the select group of claims is necessarily federal in character.'" *Pinney v. Nokia, Inc.,* 402 F.3d 430, 449 (4th Cir. 2005) *quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).  "[T]he doctrine of complete preemption 'converts an ordinary state common law complaint into one stating a federal claim' and the federal claim is deemed to appear on the face of the complaint." *Pinney,* 402 F.3d at 449 *quoting Metropolitan Life,* 481 U.S. at 63 *and citing Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 187 (4th Cir. 2002).  "To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal claim' and that 'Congress intended the federal claim to be the exclusive remedy for the alleged wrong.'" *Pinney,* 402 F.3d at 449 *quoting King v. Marriott Int'l, Inc.,* 337 F.3d 421, 425 (4th Cir. 2003) (internal quotations omitted). Thus complete preemption is utilized to determine whether the plaintiff has alleged a federal claim such that the federal court would have jurisdiction.  To determine whether there is complete preemption, Congress must have intended preemption – either through express preemption, field preemption, or conflict preemption.

*Shalala,* 112 F.3d 151, 154 (4th Cir. 1997).  Conflict preemption "occurs when state law actually conflicts with federal law." *Anderson,* 508 F.3d at 191.

### Field Preemption

 "Field preemption may occur when the federal scheme of regulation of a defined field is so pervasive that Congress must have intended to leave no room for the states to supplement it." *City of Charleston, South Carolina v. A Fisherman's Best, Inc.,* 310 F.3d 155, 169 (4th Cir. 2002).  "Where a multiplicity of federal statutes or regulations govern and densely criss-cross a given field, the pervasiveness of such federal laws will help to sustain a conclusion that Congress intended to exercise exclusive control over the subject matter."  *Id.* at 169-70 *quoting* Laurence H. Tribe, *American Constitutional Law,* § 6-31, at 1206-07 (internal citations omitted).

"[C]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."  *Pinney,* 402 F.3d at 453 *quoting Maryland v. Louisiana,* 451 U.S. 725, 746 (1981).  In *Pinney,* the Fourth Circuit took note that Congress specifically did not intend to displace state law in certain areas, such as with health and safety.  *Id.* at 454.  However, in terms of national banks, "Congress enacted the NBA in 1864 'to facilitate . . . a national banking system.'"  *National City Bank of IN v. Turnbaugh,* 463 F.3d 325, 329 (4th Cir. 2006) *quoting Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.,* 439 U.S. 299, 314-15 (1978) (internal citations omitted).  This indicates that Congress intended a national system, though the Court must look at the NBA and regulations to determine whether Congress actually sought to displace state law.

Among other things, "the NBA establishes nationally chartered banks and vests these banks with certain powers." *National City Bank,* 463 F.3d at 329.  As the United States Supreme Court recently stated,

> [b]usiness activities of national banks are controlled by the National Bank Act (NBA or Act) and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC).  As the agency charged by Congress with supervision of the NBA, OCC oversees the operations of national banks and their interactions with customers.

*Watters v. Wachovia Bank, N.A.*, 127 S.Ct. 1559, 1564 (2007) (citations omitted).  In fact, "[t]he OCC has the 'primary responsibility for surveillance of the business of banking authorized by [the NBA].  To carry out this responsibility, the OCC promulgates regulations and defines the 'incidental powers of national banks beyond those specifically enumerated in the statute.'" *National City Bank*, 463 F.3d at 329 (internal citations omitted).

In addition to the regulations that Congress allows the OCC to promulgate, the United States Supreme Court clarified the scope of state restrictions on banks:

> States are permitted to regulate activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way.

*Watters*, 127 S.Ct. at 1567.  Further, "state law may not significantly burden a national bank's own exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA."  *Id.* at 1567-68.  "Congress did not intend. . . 'to leave the field open for the States to attempt to promote the welfare and stability of national banks by direct legislation . . . . [C]onfusion would necessarily result from

control possessed and exercised by two independent authorities.'" *Id.* at 1568 *quoting Easton v. Iowa,* 188 U.S. 220, 229 (1903).

As stated above, Congress allows the OCC to promulgate regulations regarding national banks.  Under 12 C.F.R. § 34.4(a), except where federal law makes them applicable, "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks."  12 C.F.R. § 34.4.(a).  Thus federal law controls the real estate lending practices of national banks.

In its brief, Plaintiff argues that the OCC regulations provide an exception to the preemptive effect of the NBA.  Under 12 C.F.R. § 34.4.(b), "[s]tate laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers: (1) contracts . . . ."  12 C.F.R. § 34.4(b).  Plaintiff argues that its claims for unconscionability are contract claims that the OCC has excepted from the NBA.  For the exception in 34.4(b) to apply, Plaintiff's claims must only "incidentally affect" the banks' real estate lending powers.

Here, Plaintiff complains that the loan to value ratio, the terms of credit and fees, and the origination of the loans are unconscionable.  Effectively, these complaints relate to the national bank's real estate lending practices regulated by the OCC.  Through the NBA, Congress intended to occupy the field with respect to regulating national banks and their core practices in real estate lending transactions.  "Congress specifies that national banks may engage in residential lending as regulated by the OCC. 12 U.S.C. § 371(a).  Under this section, the OCC provides that national banks and subsidiaries may deal in ARM [adjustable rate mortgage] loans 'without regard to any State law limitations on those activities.'  12 C.F.R. § 34.21(a)."  *National City Bank*, 463 F.3d at 330.  For

this reason, field preemption applies and Plaintiff's claim for unconscionable contract is preempted by the NBA.

**Conflict Preemption**

Alternatively, Plaintiff's unconscionable claim falls within conflict preemption. Conflict preemption "may occur when Congress did not necessarily intend preemption of state regulation in a given area but the particular state law conflicts directly with federal law or stands as an obstacle to the accomplishment of federal objectives." *City of Charleston, South Carolina,* 310 F.3d at 169 *citing Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203-04 (1983).

Thus, for conflict preemption to apply, there must be a federal provision that regulates the particular areas of Plaintiffs complaint. While there is no provision relating to unconscionability, again the Court looks to Plaintiff's actual complaint. As discussed above, Plaintiff complains that Defendant's underwriting practices are unconscionable – specifically the loan to value ratio, the terms of credit and fees, and the origination of the loans. Additionally, Plaintiff's complaint states that Defendant failed to consider Plaintiff's ability to repay in making the loan agreement.

The OCC has provided regulations, however, that address these specific complaints. Under 12 C.F.R. § 34.4.(a)(3), national banks may make real estate loans without regard to state limitations regarding loan to value ratios. 12 C.F.R. § 34.4.(a)(3). Section 34.4(a)(4) allows national banks to establish the terms of credit, without regard to state limitations. 12 C.F.R. § 34.4(a)(4). Section 34.4.(a)(10) permits national banks to process, originate and service loans, also without consideration of state limits. 12 C.F.R. § 34.4(a)(10). Additionally, the OCC established the regulation that a national bank "shall not make a consumer loan. . . based predominantly on the

bank's realization of the foreclosure or liquidation value of the borrower's collateral, without regard

to the borrower's ability to repay the loan according to its terms.  A bank may use any reasonable

method to determine a borrower's ability to repay. . . ."  12 C.F.R. § 34.3(b).  While the bank must

consider Plaintiff's ability to repay, there are numerous methods that Defendant could use or could

have used to determine this ability.  More importantly, for the purposes of this motion, the OCC

regulation displaces any state law that would have related to this area.  To the extent that the OCC

regulations and the NBA conflict with the state law – specifically of unconscionability – the NBA

has preemptive effect.

Thus, the preemption of Plaintiff's claims of unconscionability is appropriate based on either

field preemption or conflict preemption.  As Plaintiff admits there is no claim under the NBA, the

class claim for unconscionability and the individual claim for unconscionability must be

**DISMISSED**.

### Count III: Preemption of Fraud Claims

In oral argument, Defendant did not dispute that preemption does not apply to the Plaintiff's

fraud claims, even if there was field preemption.  As the Court found above that field preemption

is appropriate, the Court finds it necessary to clarify why field preemption does not apply to the

fraudulent inducement claim.

Plaintiff's claim of fraudulent inducement is that Defendant engaged in a joint venture with

an appraiser to over-appraise the value of Plaintiff's home and therefore induce her into accepting

the loan.  Unlike underwriting and origination of loans, the joint venture, methods of appraisal, and

inducement to contract are not the core business of national banks.  Congress did not attempt to

occupy the field in this area and the OCC has not promulgated regulations indicating otherwise. Preemption does not apply to the fraudulent inducement claim.

### Count III: Specificity Requirement for Fraud Claims

Defendant argues, however, that Count III must be dismissed because it fails to allege the time, place, and nature of the fraud.  Defendant states that Plaintiff does not identify the appraiser that allegedly inflated the value or allege that Defendant knew of this inaccuracy. Defendant also notes that Plaintiff alleges a joint venture without any factual basis for the allegations, thus indicating that it is insufficient to withstand the motion to dismiss.

Federal Rule of Civil Procedure 9(b) specifies,

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. Pro. 9(b).  The "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) *quoting* 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 at 590 (2d ed. 1990).  "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison*, 176 F.3d at 784.

As the Fourth Circuit noted, Rule 9(b) has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits.  A third reason for the rule is to eliminate fraud actions in

> which all the facts are learned after discovery.  Finally, Rule 9(b)
> protects defendants from harm to their goodwill and reputation.

*Harrison,* 176 F.3d at 784 *quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A.*

*v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1055, 1056-57 (S.D. Ga. 1990).  Therefore,

the Court should not dismiss a complaint or cause of action under Rule 9(b) if "the defendant has

been made aware of the particular circumstances for which she will have to prepare a defense at

trial" and the "plaintiff has substantial prediscovery evidence of those facts."  *Harrison,* 176 F.3d

at 784.

The heightened particularity requirement applies to claims for fraudulent origination because,

as the parties agree, the claim requires proof of fraud.  In fact, Plaintiff calls the cause of action

"fraud" in her Response.  *See* Pl. Resp. to Def.'s Mot. to Dismiss, at 19-20.

In order to determine whether Plaintiff pled with the required particularity with respect to

the fraud claim, the Court will must ensure that the claim explains the time, place, contents of the

fraud, identity of the person making the misrepresentation, and what he obtained by making those

representations.  The Court must also determine whether Defendant has sufficient information to

formulate a defense.

**Time & Place**

Plaintiff's Amended Complaint states that the appraisal, which she claims was "bogus," took

place at her home around September 2003 and that the loan closed on or around September 25, 2003.

 This provides sufficient notice to Defendant about the location and time of the event.

**Contents of the Fraud**

The content of the fraud began with the alleged bogus appraisal.  In Plaintiff's Amended Complaint, she states that although Defendant did not perform the appraisal, Defendant hired an appraiser to perform the appraisal on its behalf.  Defendant then used that appraisal in establishing the loan.  Plaintiff specifically alleges that Defendant hired the appraiser and that Defendant and the appraiser were in a "joint venture," thereby alleging that there was, in fact, an agreement between Defendant and the appraiser.  Defendant used the over-appraisal to induce Plaintiff into the contract.  This information provides sufficient information to Defendant.

**Identity of the Person Making the Misrepresentation**

As mentioned above, Plaintiff's allegations state that the appraiser, hired by Defendant, made a misrepresentation in its appraisal.  Plaintiff does not specify who the appraiser was, though that information is readily available by Defendant since Defendant hired the appraiser.  In fact, in oral argument, the parties agreed that this information is either known now or is readily available.

**Defendant's Gains from the Misrepresentation**

According to Plaintiff's allegations, Defendant gained a contract in which it loaned to Plaintiff an amount beyond her means of repayment.

**Defendant's Ability to Formulate a Defense**

With the above information, it is clear that Defendant can fairly formulate a defense.  Based on the Amended Complaint, Plaintiff sufficiently alleges that Defendant hired the appraiser and that there was a "joint venture" between Defendant and the appraiser that led to the bogus appraisal.  Although Plaintiff does not name the appraiser, this information is available to Defendant as it is

within their possession and knowledge. This puts Defendant on notice about its actions and allows it to formulate a defense.

For these reasons, the Court finds that the fraud claim was pled with sufficient particularity and Defendant's motion to dismiss Count III is **DENIED**.

**Conclusion**

For the reasons mentioned above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Amended Complaint (Doc. 6).  Specifically, the Court **GRANTS** the motion with respect to Count I and Count II of the complaint and **DENIES** the motion with respect to Count III.   Additionally, the Court **GRANTS** Plaintiff's Motion for Leave to File Surreply.    The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.


ENTER:        June 19, 2008



ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE