IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CORLETTA ROSIE WATKINS, individually
and on behalf of all others similarly situated,

           Plaintiffs,

v.                                      CIVIL ACTION NO. 3:08-0132

WELLS FARGO HOME MORTGAGE,
a Division of Wells Fargo Bank, N.A.,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Corletta Rosie Watkin's motion for an award of attorneys' fees and costs (Doc. 93), and Defendant Wells Fargo Home Mortgage's ("Wells Fargo"): (1) request for a hearing on Plaintiff's motion (Doc. 96) and (2) motion for partial summary judgment (Doc. 85). Based on the briefs, and for the reasons stated below, the Court **GRANTS** Plaintiff's motion; **DENIES** Defendant's request for a hearing; and **DENIES as moot** the motion for summary judgment.

This case, filed on December 6, 2007, concerned Defendant Well Fargo's mortgage lending practices and, in particular, the validity of a mortgage loan issued to Plaintiff Corletta Watkins. The case, filed on December 6, 2007, was settled in a mediation conference with Magistrate Judge Mary E. Stanley, on February 2, 2010. Pursuant to the settlement agreement, Defendant agreed to pay $25,000 for a quitclaim deed on Plaintiff's home, $15,000 to resolve servicing claims, and reasonable attorneys' fees. Such payments were made in exchange for Plaintiff's agreement not to contest the foreclosure of her home, to vacate her home within 90 days of the execution of the settlement

agreement, and to dismiss her claims against Wells Fargo with prejudice. Although the parties have agreed to an award of "reasonable" attorneys fees by Wells Fargo, there has been no consensus as to the amount. Accordingly, Plaintiff now moves for a court-ordered award.

Plaintiff seeks $55,487.69 in costs and attorney fees. The fee request includes compensation for the work of attorneys Dan Hedges, Bren Pomponio, and Sara Bird, of Mountain State Justice, Inc., and for paralegal hours. Plaintiff moves for an award based upon hourly rates of $425/hour, $325/hour, $250/hour, respectively, for each attorney, and of $100/hour for paralegal hours. In support of her motion, Plaintiff initially provided the Court with: (1) affidavits from Dan Hedges, Bren Pomponio, and Sara Bird; (2) records of the hours spent on various case activities, dated and with brief descriptions; and (3) a list of costs and expenses, accompanied by an affidavit from Dan Hedges. The affidavits from Dan Hedges, Bren Pomponio, and Sara Bird each describe their respective years in practice, academic background, specialized experience and/or other qualifications for the hourly rate requested. Additionally, each affidavit attests that the hourly rate requested was determined after "communications with other attorneys," either "in the area" or "around the county," and that the rate is within the range of "the market rate in [the] community" for an attorney with similar experience, expertise, and/or academic background.

Defendant opposes Plaintiff's request for fees and costs, arguing that Plaintiff should be awarded no more than $15,000. According to Wells Fargo, Plaintiff's request is unreasonable, because: (1) Plaintiff included time spent on unsuccessful claims, (2) the hourly rates requested for Plaintiff's attorneys are unreasonable, (3) the amount of time claimed for various tasks is unreasonable and in places duplicative, (4) certain paralegal hours are unrecoverable, and (5) there is a risk of double recovery for hours claimed by Dan Hedges in this action and those claimed for his

work as Plaintiff's bankruptcy counsel.

Plaintiff filed a reply to Defendant's response, providing additional documents to support the requested rates and the number of hours claimed. Attached to the reply, Plaintiff submitted: (1) documents pertaining to a case in which Dan Hedges and Bren Pomponio were recently awarded fees at the rates requested here; (2) documents in a case where Dan Hedges and Bren Pomponio were recently awarded fees at rates close to those requested here ($400/hour and $300/hour, respectively); (3) the affidavit of Benjamin Bailey, an attorney from Charleston, West Virginia, in which Mr. Bailey attests to the reasonableness of the rates requested by Dan Hedges and Bren Pomponio; (4) documents related to Dan Hedges employment as special counsel in Plaintiff's bankruptcy action; (5) receipts and other invoices related to the costs and expenses in this action; (6) the affidavits of Rebecca Yocum and Kim Cooper, paralegals for Mountain State Justice; and (7) a record of the additional time spent producing the reply, with a supporting affidavit from Bren Pomponio.

**Analysis**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Robinson v. Equifax Info. Services, LLC.*, 560 F.3d 235, 243 (4th Cir. 2009). This amount is known as the "lodestar amount," *see, e.g., Robinson*, 560 F.3d at 243; *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008), and it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

3

"In deciding what constitutes a 'reasonable' number of hours and rate ... a district court's discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fees awards in similar cases." *Robinson*, 560 F.3d 243-44; *see also Grissom*, 549 F.3d at 320-21; *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (adopting 12 factors set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)). "After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. ... [O]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotations and citations omitted); *see also Hensley*, 461 U.S. at 434 ("The product of reasonable hours times a reasonable rate does not end the [attorneys' fees] inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'").

**Applying the Lodestar Method Here**

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks and award." *Grissom,* 549 F.3d at 321 (quoting *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Here, Plaintiff requests rates of $425/hour, $325/hour, and $250/hour, for Dan Hedges, Bren Pomponio and Sara Bird. In support of her request, Plaintiff provides the evidence described *supra*, including the affidavit of Benjamin Bailey, which was attached to Plaintiff's reply.

The Court **ORDERS** Plaintiff's attorneys be compensated at the following rates: (1) Dan Hedges at a rate of $350/hour, (2) Bren Pomponio at a rate of $275/hour, and (3) Sara Bird at a rate of $ 175/hour. The Court deems these rates reasonable for the following reasons. The Court approved rates of $300/hour and $225/hour for Dan Hedges and Bren Pomponio in June 2006. *See Short v. Wells Fargo Bank Minnesota, N.A.,* 2006 WL 1589611 (S.D. W.Va. June 8, 2006). Dan Hedges and Bren Pomponio were also awarded fees at an hourly rate of $400/hour and $300/hour, in October 2009, in a case before the Circuit Court of Roane County. *See Pl.'s Ex. C* (Doc. 95-3), 3. This action was filed on December 6, 2007, in the Circuit Court of Cabell County, and removed to this Court on February 26, 2008. The bulk of the time spent by Plaintiff's attorneys on this case, therefore, occurred in 2007 and 2008.[1]

The Court finds that the rate Plaintiff's attorneys should receive for work completed in 2007

---

[1] For example, the only attorney entries in 2009 were two entries for Dan Hedges and nine entries for Bren Pomponio, totaling 0.70 hours and 6.55 hours, respectively. Further, the only entries for Dan Hedges and Bren Pomponio in 2010 were entries totaling approximately ten hours apiece; the time spent preparing for and participating in mediation and the time spent briefing the motion for fees. Sara Bird did not record any time in this action in 2009 or 2010.

and 2008 is lower than the $425/hour, $325/hour, and $250/hour rates sought in 2010. Thus, taking into consideration the rates of $300/hour and $225/hour awarded to Dan Hedges and Bren Pomponio in June 2006, *see Short*, 2006 WL 1589611, and of $400/hour and $300/hour awarded to them in late 2009, the Court finds the rates of $350/hour and $275/hour reasonable and appropriate here.

In determining that a lower than requested rate is reasonable, the Court considered: (1) the fact that Plaintiff bears the burden of proving the appropriate rate, and (2) that Plaintiff's initial motion for fees did not include additional supporting evidence beyond the affidavits of her own counsel. Moreover, Plaintiff's reply, which provided an opportunity to remedy this general lack of supporting evidence, was accompanied by only one additional affidavit – that of Benjamin Bailey. Mr. Bailey's affidavit attests to the reasonableness of just two of the three rates requested by Plaintiff's attorneys. In the Court's view, this general lack of supporting evidence warrants a reduction in the rates awarded. *See Grissom,* 549 F.3d at 321; *see also Blum v. Stenson*, 465 U.S. 886, 895 n. 11 ("[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

At the above rate, and at a rate of $100/hour for paralegal hours, which the Court approves as reasonable, Plaintiff's lodestar calculation is as follows:

| | | |
|---|---|---|
| Dan Hedges | 60.80 hours at $350/hour | $21,280.00 |
| Bren Pomponio | 69.89 hours at $275/hour[2] | $19,219.75 |

---

[2]This figure includes the 7.99 hours spent by Attorney Pomponio preparing the instant motion and replying to Defendants' response in opposition. *See Pl.'s Ex. I* (Doc. 95-9), 2. In light of Defendant's agreement to pay attorneys fees and the parties' inability to agree upon an

| | | |
|---|---|---|
| Sara Bird | 18.00 hours at $175/hour | $3,150.00 |
| Paralegal Hours | 19.00 hours at $100/hour[3] | $1,900.00 |
| | **Total**: | $45,549.75 |

Now that the Court has determined Plaintiff's lodestar figure, it must ascertain whether this amount should be enhanced or reduced based upon the hours spent on unsuccessful claims unrelated to successful claims and/or the overall "results obtained." See Robinson, 560 F.3d at 244; *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002); see also *Hensley*, 461 U.S. at 434-35 ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotations and citation omitted).

Defendant seeks to reduce the number of hours Plaintiff is compensated for, arguing that: (1) the number of hours is unreasonable in light of the results obtained, and (2) some of the hours claimed are duplicative of those Dan Hedges spent as Plaintiff's bankruptcy counsel. The Court disagrees. First, the Court finds that Plaintiff's recovery was substantial. Plaintiff received $25,000 for conveying her home to Defendant, an amount greater than the value of the residence, which was fully encumbered. Additionally, Plaintiff was awarded $15,000 for post-bankruptcy servicing claims; she avoided payments on her mortgage during the pendency of this litigation; and her settlement agreement includes attorneys' fees. Taken together, these recoveries constitute substantial success. Defendants' argument that the fee award should be reduced by the hours Dan Hedges spent as Plaintiff's bankruptcy counsel is also unconvincing. The Application and Order pertaining to the

---

amount of such fees, the Court finds these hours reasonably expended.

[3] The Court finds that the reduced request for paralegal hours made in Plaintiff's reply is reasonable and supported by the evidence.

appointment of Mr. Hedges as Plaintiff's bankruptcy counsel clearly state that Mr. Hedges will be paid from this litigation. Consequently, Mr. Hedges' appointment as bankruptcy counsel has no bearing on the fee award and the lodestar calculation will not be reduced, accordingly.

Next, Defendant seeks to reduce the fee award based on the hours spent on unsuccessful claims and duplicative attorney hours. Here, the Court is convinced that some reduction is appropriate. First, several of Plaintiffs claims, specifically the class-action claims, were dismissed early in this litigation. The time Defendants argue Plaintiff's attorneys spent on these unsuccessful claims are outlined in detailed charts submitted to the Court. Additionally, Defendants submitted charts supporting their allegation that the total number of attorney hours claimed by Plaintiff is unreasonable. These charts outline, amongst other things, the alleged duplication of attorney time.

In her reply, Plaintiff failed to directly respond to Defendants allegation of duplication, or to the charts provided by Defendants. Thus, keeping in mind that Plaintiff has the burden to prove the reasonableness of the hours requested, the Court finds some reduction is warranted. With regard to the time spent on unrelated, unsuccessful claims, and in light of Defendants' uncontested claim that there was some duplication of hours, the Court reduces the lodestar award by 20%.[4] Based on a

---

[4]Although the Court has thoroughly reviewed the charts provided by Defendant, the Court finds that it is unnecessary to separate out the hours spent on successful or unsuccessful claims, or to determine which specific attorney hours were unreasonably duplicative, on an hour-by-hour basis. Instead, the Court finds that a percentage reduction is appropriate here. *See Short,* 2006 WL 1589611, at *2 ("[T]he most critical factor in determining the amount of a fee award is the degree of success obtained. This factor is particularly important were a plaintiff, as in this case, has succeeded on some of his claims and not on others. ... In such cases, counsel's time is spent on the case as a whole and dividing out hours spent on individual claims becomes difficult. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation [sic] the hours reasonably expended on the litigation.") (citing *Hensley*, 461 U.S. at 435-36) (internal quotations and citations omitted); *see also Bostic*, 87 F.Supp.2d at 614 n. 6 (same); *Hensley*, 461 U.S. at 435 ("The result is what matters.").

lodestar figure of $45,549.75, this results in a fee award of **$36,439.80**.

### Plaintiff's Costs

Defendants contest Plaintiff's claim for costs on the grounds that: (1) "it appears [Mountain State Justice] seeks obtain a double recovery of its costs and expenses," based on the Application to Employ Special Counsel and Dan Hedges representation of Plaintiff in her bankruptcy proceeding, *see Defs.' Br. in Opp'n* (Doc. 94), 20; (2) the costs sought are not adequately documented; (3) the fees sought for Plaintiff's expert reports are not recoverable; (4) the copying costs sought are not recoverable; and (5) Plaintiff should not recover costs related to travel or postage. The Court disagrees. First, as discussed *supra*, Mr. Hedges' appointment as Plaintiff's bankruptcy counsel has no bearing on the motion for fees and costs. Those costs awarded here will not result in a double recovery based on the bankruptcy action and, therefore, this is not a reason to deny Plaintiff's motion. Additionally, Plaintiff's have provided an affidavit by Dan Hedges, accompanied by a list summarizing the costs requested, *see* Doc. 93, 27-29, as well as invoices or receipts for the costs listed in the attached summary. *See Pl.'s Ex. F* (Doc. 95-6). Taken together, the affidavit, summary listing, and invoices and receipts provide adequate documentation of the costs requested.[5]

Next, Defendants' argument that Plaintiff's expert costs, travel and postage costs, and copying costs are not recoverable relies heavily upon the Honorable Thomas E. Johnston's Memorandum

---

[5]The only costs for which Plaintiff has provided neither invoices nor receipts are the "copying costs." Defendant contests these copying costs on the grounds that "there is no indication as to what is being copied or why." *Defs.' Br. in Opp'n* (Doc. 94), 21. However, Plaintiff clearly states, in an affidavit attached to her reply, that "[a]ll photocopies made in connection with this matter were for the purposes of this litigation, whether it be for opposing counsel, the Court or experts." *Yocum Affidavit* (Doc. 95-7), ¶ 9; *see also Cooper Affidavit* (Doc. 95-8) ¶ 9 (same). The Court finds this sworn statement is adequate documentation of the amount and purpose of these costs to warrant recovery.

Opinion and Order in *Cook v. Jones & Jordan Eng'g, Inc.*, 2009 WL 3169152 (S.D. W.Va. Sept. 29, 2009). However, the Court is not convinced that the *Cook* decision supports Defendants' claims. In *Cook*, the expert fees requested were not awarded because the expert had not been deposed or come before the court. Instead, the *Cook* expert had simply been retained for possible future use. *Id.* at *6. Here, the facts are different. Plaintiff's expert, James Brown, conducted an investigation that resulted in the drafting of an expert report. Thus, Plaintiff should be reimbursed for his fee. As discussed in note 5, *supra*, Plaintiff's copying costs are also recoverable. Finally, the Court finds Plaintiff's travel costs adequately supported and, thus, recoverable. The Court agrees with Defendants, however, with regard to the $98.26 requested for Fed Ex costs. Plaintiff provides a receipt for these postage costs, without any additional information. This is not adequate to warrant recovery and, therefore, the Court reduces the requested costs of $2,519.29 by $98.26. This results in an award for costs and expenses of $2421.03.

In conclusion, the Court finds the majority of the costs requested reasonable and adequately supported and Plaintiff is awarded an amount of **$2,421.03** in costs and expenses.

## Conclusion

The Court **GRANTS** Plaintiff's motion and **ORDERS** Defendant Wells Fargo pay Plaintiff **$36,439.80** in attorneys fees and **$2,421.03** in costs and expenses.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: June 15 , 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE